IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| QUINCY MILES, On Behalf of Himself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 3:16-CV-0778-D |
| VS. | § § | |
| ILLINI STATE TRUCKING CO., | § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
AND ORDER

In this putative collective action to recover overtime pay and unpaid wages, the court addresses plaintiff's motion for conditional certification and notice to potential class members. For the reasons that follow, the court largely grants the motion, except for sustaining certain objections to the proposed notice and requested discovery.

I

Plaintiff Quincy Miles ("Miles") brings this putative collective action on behalf of himself and all others similarly situated against defendant Illini State Trucking Co. ("Illini"). He sues under 29 U.S.C. § 216(b), a provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, to recover overtime pay and unpaid wages. Illini is a transportation company serving, among others, the energy industry. Miles is a former Illini employee who worked as a well site coordinator.[1]

---

[1]Miles uses the term "sand coordinator," and Illini uses the term "well site coordinator." Miles acknowledges that the two are interchangeable. P. Reply 4.

Illini's well site coordinators are responsible for "inventorying and keeping track of sand, inspecting equipment for sand leaks, reporting conditions to the Terminal Manager, recording the delivery of sand and placement in designated bins, hooking up hoses, communicating with dispatchers regarding levels of sand, and blowing off sand."  Miles Decl. ¶ 3.  As a well site coordinator, Miles was paid a fixed salary of approximately $1,250 per week and a per diem of $45.00.

Miles alleges that he often worked 16 to 20 hours per day, six to seven days per week, without receiving a premium for overtime hours.  He asserts that, in one instance, he worked 90 days in a row without a day off; in another instance, on a site in Colorado, he worked "nearly 5 months" without a day off, Miles Decl. ¶ 5; and, at a facility in Mississippi, he worked for more than three months without a day off.  According to the declarations of other Illini well site coordinators, they worked similar hours for which they were paid a fixed salary and a per diem rate, but not overtime.  In addition to the five total declarants who submitted declarations, approximately eight other Illini employees are suggested as potential plaintiffs.

Miles moves the court to conditionally certify this collective action and approve court-facilitated notice to a class defined as "All persons employed by Illini State Trucking, Co. as Sand Coordinators at any time during the last three years."  P. Mot. 5.

- 2 -

II

The court first sets out the legal standard for conditional certification.

> Section 216(b) of the FLSA authorizes a plaintiff to bring a collective action on behalf of similarly-situated persons, provided that any person who desires to become a part of the collective action files a written consent in the court. When a plaintiff seeks to bring a collective action, a district court can in its discretion facilitate notice to potential plaintiffs of their right to opt-in to the suit.

*Behnken v. Luminant Mining Co.*, 997 F.Supp.2d 511, 515 (N.D. Tex. 2014) (Fitzwater, C.J.) (citation omitted) (citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Barnett v. Countrywide Credit Indus., Inc.*, 2002 WL 1023161, at *1 (N.D. Tex. May 21, 2002) (Lynn, J.) (applying *Hoffman-La Roche* to FLSA context)). "Although the Fifth Circuit has declined to adopt a specific test to determine when courts should exercise their discretion to facilitate notice or certify a collective action, this court has adopted the prevailing two-stage test." *Id.* (citing *Aguilar v. Complete Landsculpture, Inc.*, 2004 WL 2293842, at *1 (N.D. Tex. Oct. 7, 2004) (Fitzwater, J.) (adopting prevailing standard)); *see also Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008) (noting that collective actions are "typically" analyzed this way); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995) (declining to adopt specific standard, but finding no abuse of discretion where district court applied prevailing standard), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *Valcho v. Dall. Cnty. Hosp. Dist.*, 574 F.Supp.2d 618, 621-22 (N.D. Tex. 2008) (Fitzwater, C.J.) (reaffirming decision in *Aguilar*).

Under this test, the court first determines whether plaintiffs have provided sufficient evidence of similarly-situated potential plaintiffs to warrant court-facilitated notice. If they have, the court conditionally certifies the class and facilitates notice to the potential plaintiffs. Second, the court reexamines the class after notice, time for opting-in, and discovery have taken place, typically in response to defendant's motion. If the court finds that the class is no longer made up of similarly-situated persons, it decertifies the class. To establish that employees are similarly situated, a plaintiff must show that they are similarly situated with respect to their job requirements and with regard to their pay provisions. The positions need not be identical, but similar.

*Id.* at 516 (citations and internal quotation marks omitted).

The court is generally more lenient with regard to substantial similarity during the notice stage of the analysis, but notice is by no means mandatory. The relevant inquiry in each particular case is whether it would be appropriate to exercise the court's discretion to facilitate notice. A primary reason for exercising this discretion is to ensure that the joining of other parties occurs in an orderly, sensible, efficient and proper way. The use of court-facilitated notice can ensure that information is timely, accurate, and informative, and it can also guard against abuse by misleading communications. The parties and the court can benefit from settling disputes about the content of the notice before it is distributed, because it may avoid the need to cancel consents obtained in an improper manner.

*Id.* (citations, internal quotation marks, brackets, and ellipsis omitted).

But before granting court-facilitated notice, the court should satisfy itself that there are other similarly-situated employees of [Illini] who would desire to opt-in to the lawsuit. This is because courts have a responsibility to avoid the stirring up of litigation through unwarranted solicitation. The court must ensure that an employer is not unduly burdened by a frivolous fishing expedition.

*Id.* (bracketed material added; citations, internal quotation marks, other brackets, and ellipses

- 4 -

omitted).

> For these reasons, the court has less cause for leniency during the notice phase of the analysis where a plaintiff has already conducted discovery on the certification issue. One of the rationales for leniency is that at the early stages of litigation, plaintiffs have not had time to conduct discovery and marshal their best evidence. This rationale disappears, however, once plaintiffs have had an opportunity to conduct discovery. Thus because the court does not intend that its powers be used for a frivolous fishing expedition, it will hesitate to facilitate notice where a plaintiff, having already conducted discovery, still cannot support the claim with evidence.

*Id.* at 517 (citations and internal quotation marks omitted).

## III

Illini contends for two reasons that Miles has not introduced sufficient evidence of similarly-situated potential class members to warrant conditional certification of a class and court-facilitated notice.  It posits, first, that Miles's evidence is too vague and conclusory to demonstrate that the putative class of well site coordinators is similarly situated.  It maintains, second, that Miles has offered no evidence of an unlawful practice or policy.

## A

The court first turns to Illini's contention that Miles's evidence is too vague and conclusory to demonstrate that the putative class of well site coordinators is similarly situated.  Illini contends that there is no factual basis to support Miles's allegations because the declarations submitted state, in identical terms, that each declarant "occasionally worked with and around other sand coordinators employed by Illini."  Miles Decl. ¶ 6; Burgin Decl. ¶ 6; Davis Decl. ¶ 6; Hoemke Decl. ¶ 6; Phillips Decl. ¶ 6.  Illini contends that these

- 5 -

statements are too vague and conclusory to establish the declarants' personal knowledge of the job duties and payment terms of the putative class.

In support of this argument, Illini cites several cases holding that vague or conclusory evidence cannot show that class members are similarly situated. *See Clark v. City of Ft. Worth*, 800 F.Supp.2d 776, 780 (N.D. Tex. 2011) (McBryde, J.) (holding that conversations with other putative class members were insufficient to show existence of potential similarly situated employees); *Songer v. Dillon Res., Inc.*, 569 F.Supp.2d 703, 707 (N.D. Tex. 2008) (McBryde, J.) (holding that affidavits did not establish declarants' personal knowledge pertaining to other employees); *Mathis v. Stuart Petroleum Testers, Inc.*, 2016 WL 4533271, at *3 (W.D. Tex. Aug. 29, 2016) (holding that plaintiff's affidavit did not sufficiently describe putative class's job duties). Illini also cites a case holding that vague and conclusory evidence did not show the existence of a single decision, policy, or plan that affected putative class members. *See Stiles v. FFE Transp. Servs., Inc.*, 2010 WL 935469, at *3 (N.D. Tex. Mar. 15, 2010) (Boyle, J.) (discrediting recitations that plaintiffs had "often worked in excess of 40 hours per week").

In reply, Miles contends that his evidence sufficiently describes the putative class members—Illini's well site coordinators—and shows that they are similarly situated. He maintains that the declarations thoroughly describe the job duties of a well site coordinator, and that his evidence shows, through personal knowledge of the declarants, that the putative class consists of well site coordinators who are similarly situated in that they worked overtime hours while not being paid overtime. For example, Miles avers that he often

worked 16 to 20 hours per day, and worked for one period of three months and one period of approximately five months without a day off.  Miles avers that, for this work, he was paid a salary of approximately $1,250 per week plus a $45.00 per diem.  The four other declarants provide similar accounts.  For example, former Illini well site coordinator William Burgin ("Burgin") avers that he often worked up to 20 hours per day, for reasons such as executing turnover between 12-hour shifts, and that he once worked for a period of six weeks with only one day off.  Burgin also states that he was paid a salary of approximately $1,250 per week, plus a $45.00 per diem.  And although the five declarants' contact with other potential plaintiffs is not described in detail, each declarant attests that he was familiar with other well site coordinators' job duties and pay, based on working with them.

The court concludes that Miles has met his obligation of providing substantial allegations that potential class members are similarly situated.  The individual declarations describe a similar employment situation experienced by five different employees.  The declarations indicate knowledge of other well site supervisors' similar conditions based on working with them.  And four of the five declarants provide the names of other employees who the declarant believes would join the case.  Miles has "presented a 'factual nexus' that binds the named plaintiff[] and the potential class members." *Behnken*, 997 F.Supp.2d at 521 (citing *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008) (Robinson, J.)).  That factual nexus is the alleged practice of Illini's failing to pay an overtime premium to well site supervisors who worked over 40 hours per week.  The specificity and personal knowledge of Miles's evidence is superior to that presented in the

cases that Illini cites, and is sufficient to support conditional certification.

B

The court now turns to Illini's second contention: that Miles offers no evidence of an unlawful practice or policy. Illini maintains that there is nothing inherently unlawful about compensating employees with a set salary and per diem, and that it will be necessary for Miles and the putative class members to establish the existence of a uniform practice or policy that prevailed despite differences in employee circumstances. According to Illini, these differences include:

> (1) whether over 40 hours were worked in a week; (2) how many hours over 40 were worked in each such week; (3) how much compensation was earned each such week; (4) the regular rate for each such week; (5) whether overtime compensation was due and unpaid; and [6] whether an overtime exemption applied.

D. Br. 6.

In reply, Miles maintains that Illini adheres to a uniform policy of not paying overtime to well site coordinators, and that the six issues that Illini identifies are either affirmative defenses or merits arguments that are not required to be proved at the conditional certification stage.

The court will assume *arguendo* that Miles must provide a substantial allegation that the potential class members were subject to a common decision, policy, or plan. *See Behnken*, 997 F.Supp.2d at 518 n.4 ("The court is assuming *arguendo* that plaintiffs must provide a substantial allegation that the potential class members were subject to a common

- 8 -

decision, policy, or plan. The court notes that other courts have suggested that an allegation of a common decision, policy, or plan may not be required under § 216(b)." (citation omitted)).   "The question presented is whether plaintiffs have provided substantial *allegations* that potential class members were subject to a single decision, policy, or plan that violated the FLSA."  *Id.* at 518.

Because Miles has submitted declarations stating that five well site supervisors worked over 40 hours per week for many weeks, without overtime pay, and that all well site supervisors were subject to the same policy, the court concludes that he has met his obligation to provide substantial allegations that potential class members were subject to a single decision, policy, or plan that violated the FLSA.  And to the extent that Illini's brief may be construed to argue that individualized questions make Miles's claim unsuited to collective action treatment, the questions raised do not negate the common factual nexus established.  *See supra* § III(A); *Nguyen v. Versacom, LLC*, 2015 WL 1400564, at *6 (N.D. Tex. Mar. 27, 2015) (Fitzwater, J.).

IV

The court now considers the form of notice that should be given to potential class members.

A

"The benefits of a collective action 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'"  *Behnken*, 997 F.Supp.2d at 523 (quoting

*Hoffman-La Roche*, 493 U.S. at 170).  "Consequently, district courts must exercise their discretion regarding the form and content of the notice so as to ensure that the notice is accurate and that it includes information that would be needed to make an informed decision about whether to join the lawsuit." *Id.*

Illini objects to Miles's proposed notice form on the following three grounds: (1) it fails to properly inform potential class members that their rights will not be adjudicated by the action if they do not opt in; (2) it fails to notify potential class members of their right to consult counsel of their choosing with respect to the claims in this suit; and (3) it fails to advise potential class members that, if the case is not decided in their favor, they may be responsible for their proportional share of taxable court costs.

## B

### 1

Illini first objects to a sentence in the proposed notice's paragraph entitled, "What are my options?"  Illini contends that the notice misleads the reader when it says, "If you do not return your Consent to Join form, you will not be a part of this case and will not receive any additional wages the Court may find you are owed."  P. Proposed Not. 1.  Illini contends that this statement gives the incorrect impression that the court may adjudicate the rights of someone who chooses not to become a party.  Miles replies that this proposed language is appropriate because the surrounding context of the proposed notice form, and parts of the proposed consent form, communicate that a decision on any employee's claim would be purely conditioned upon the employee's joining the action.  According to Miles, the

- 10 -

documents, taken together, make clear that the case will have no effect on employees who choose not to participate.

The court concludes that the sentence to which Illini objects—"If you do not return your Consent to Join form, you will not be a part of this case and will not receive any additional wages the Court may find you are owed," P. Proposed Not. 1—is misleading because it suggests that the court may adjudicate the rights of someone who chooses not to become a party, and that someone who opts not to join this specific lawsuit will not receive any additional wages at all, even if the court determines that the person is actually owed additional wages. *See*, *e.g.*, *Behnken*, 997 F.Supp.2d at 523 (describing district court's discretion to ensure accuracy of notice's content, in order to enable informed decision). It appears to be written somewhat rhetorically, to gin up participation in the lawsuit. Accordingly, the court sustains Illini's first objection, and directs that the sentence quoted above be modified so that it reads as follows: "If you do not return your Consent to Join form, you will not be a part of this case, and the court will not make a decision about any claim that you may or may not have to additional wages."

2

Illini next contends that the notice form must be modified to inform potential class members that they have a right to consult any counsel of their choosing, and that, by choosing to opt in, they are agreeing to retain the plaintiff's counsel as their own. Miles's only response to this objection is that he does not oppose adding language advising potential class members of their right to contact any counsel of their choosing. Accordingly, the court

- 11 -

sustains Illini's second objection and directs that the following language be added to the end of the notice's "What are my options?" paragraph: "If you return the Consent to Join form, you are agreeing to be represented by plaintiffs' attorney. You also may contact any attorney of your choosing and be represented in this case by that attorney." *See, e.g., Reyes v. Quality Logging, Inc.*, 52 F.Supp.3d 849, 853 (S.D. Tex. 2014) (holding that opt-in plaintiffs are bound by acts of class counsel and that notice must inform potential class members that they may contact attorney of their choosing).

3

Illini next contends that the notice should inform potential class members that, if they choose to opt in and the judgment is unfavorable to them, they may be responsible for taxable court costs. Illini argues that notice of this potential liability is necessary to enable someone to make an informed decision about whether to join the lawsuit. *See Behnken*, 997 F.Supp.2d at 524. Miles replies that advising potential plaintiffs of the possibility that they may bear court costs is unnecessary and counterproductive. He maintains that advising potential class members that court costs may be assessed is out of proportion to the risk, and that including this information could unnecessarily chill participation in the collective action. *See Hussein v. Capital Bldg. Servs. Grp., Inc.*, 152 F.Supp.3d 1182, 1196 (D. Minn. 2015) (holding that threat of payment of defense costs was out of proportion to the risk); *Hart v. U.S. Bank NA*, 2013 WL 5965637, at *7 (D. Ariz. Nov. 8, 2013) (same).

The court concludes that information about the possibility of taxable court costs should be included in the notice. This court has previously held that this information is

necessary for someone to make an informed decision about whether to join the lawsuit. *See Behnken*, 997 F.Supp.2d at 524. Accordingly, the court sustains Illini's third objection and directs that the following language be added to the proposed notice form: "You may be required to pay your proportional share of taxable court costs if the plaintiffs receive an unfavorable decision."

V

Finally, Illini contends that the expedited discovery Miles requests is overly broad. Miles requests the names, last known addresses, personal email addresses (if available), telephone numbers, and first four digits of the social security number of each potential class member. Illini objects to providing anything beyond the names and last known addresses. Miles does not respond to this objection.

The court concludes that names and last known addresses are sufficient information to allow Miles to contact potential class members without disclosing "highly personal information about persons who may in fact have no interest in this litigation." *Aguilar*, 2004 WL 2293842, at *5. "[T]he need for compelled disclosure of such data [is] outweighed by the privacy interests of potential class members, and [there is] no apparent reason to conclude that sending a letter to the person's last known address would be inadequate." *Id.*

Accordingly, Illini's objection to this discovery is sustained. The court directs Illini, within 28 days of the date this memorandum opinion and order is filed, to provide plaintiff's counsel the names and last known addresses of all persons who fall within the conditionally certified class.

- 13 -

\*     \*     \*

For the reasons set out, the court grants in part and denies in part Miles's motion for conditional certification and notice to potential class members.

**SO ORDERED**.

January 10, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE